### JOHN KILCOYNE v. WELLS A. HUTCHINS, MAYOR.

THE JONES LOCAL OPTION LAW DOES NOT AUTHORIZE OVERLAPPING OF DISTRICTS.

On May 21, 1907, a majority of the electors of a residence district in the city of Portsmouth signed a petition under the act, 98 O. L. 68 (Lan. Rev. Stat. 7283a et seq.; B. 4364-30a et seq.), in favor of prohibiting the sale of intoxicating liquors in that district. This petition was filed with a judge, found sufficient, and the residence district duly established prior to October 24, 1907. On the later date another petition was filed with the judge, also in favor of prohibiting the sale in the residence district described in it. The residence district described in the second petition overlapped the first and was identical with it, except that the second had an additional block attached containing forty-five electors: Held, Residence districts established under said act are territorial units; the act does not authorize the overlapping of a valid prior residence district by a later petition.

[Syllabus by the court.]

ERROR to Scioto common pleas court.

T. K. Funk, Nathan Gumble and O. W. Newman, for plaintiff in error.

W. B. Wheeler, Harry Ball and W. B. Richardson, for defendant in error.

JONES, J.

It appears from the record of this case that on May 21, 1907, a petition was filed with the judge of the court of common pleas of this county, under what is known as the Jones law, act 98 O. L. 68 (Lan. Rev. Stat. 7283a et seq.; B. 4364-30a et seq.), signed by a majority of the electors of a certain residence district, in favor of prohibiting the sale of intoxicating liquors as a beverage in that district.

The judge of the court of common pleas held that petition sufficient, and thereupon a certificate was filed with the clerk of the municipal corporation. The finding by the judge was made on June 24, 1907, and under that finding the petition became effective.

Later, on October 24, 1907, another petition was filed with the same judge, signed by a majority of the electors of a residence district, which residence district was constituted largely from the territory that was incorporated in the first petition, with an additional block attached to it, in which there were forty-five electors. The latter

petition was presented to the common pleas judge, under Sec. 1 of 98 O. L. 68, for the purpose of having him pass upon the sufficiency of that petition, and for the purpose of declaring the second residence district dry.

It is an undisputed fact in the case that the territory in the second petition overlaps that contained in the first. The only additional territory in the second is this block that I have spoken of in which there was an additional number of electors to the number of about forty-five.

A motion was made to dismiss this petition. It came on for hearing upon the motion and upon the agreed statement of facts. And the case is presented to us to determine the construction of the Jones law, and to determine whether or not the common pleas judge erred in overruling the motion and sustaining the second petition.

I will say that, ordinarily, we would not pass upon a question of such importance as this immediately after the close of the argument, as we do in this case, were it not for the fact that we are fully satisfied with the position that we are now taking.

The first question presented is this:

It appears that some of the petitioners who had the first district established by the petition of May 21, 1907, were acting in behalf of the saloon interests, and that it was partly through their efforts that the first district was established; and their motive is attacked in this case. We do not think that the motive of the signers of this first petition can be inquired into in this court. But I will say upon that question, were we to pass upon it—were it necessary to pass upon it—we would probably hold that, when the first petition was filed, May 21, 1907, the motive could not be considered in the case under the authorities as we view it.

Under Sec. 1 of 98 O. L. 68 the electors of any residence district have the right to sign the petition. Therefore under that act a statutory right was given them. And the case of *Cincinnati Volksblatt Co.* v. *Hoffmeister*, 62 Ohio St. 189, 198 [56 N. E. Rep. 1033; 48 L. R. A. 732; 78 Am. St. Rep. 707], will probably apply here, where Judge Spear, citing a number of authorities, says:

"Ordinarily the motive, or purpose, of the party who is in the exercise of, or is about to exercise, a clear legal right, is unimportant. * * * We are of the opinion that where a suitor demands the enforcement of a clear right given him by the law, whether the remedy be legal or equitable, his motive for such action is not a proper subject for judicial investigation."

### Kilcoyne ·v. Hutchins.

It appears from the opinion of Judge Spear that since the qualified electors of any residence district have a right to sign a petition, whether it be one to create a dry district or a wet district, that their motive cannot be called in question. Of course in cases of this kind the motive of one section of the residence district is for the purpose of creating a dry territory, and of the other section of the same district probably will be to do all it can to create a wet territory. No more, do we think, can the motives of a signer of these petitions be attacked because he was interesting himself on the wet side of the proposition than could the motive of one who is interesting himself upon the dry side of a proposition. But, however that may be, it cannot be questioned in this case, because that would be drawing the question into the case collaterally; if it could have been raised at all, it should have been done when that first petition was filed; but here we have the finding of the judge passing upon that petition—upon every incident connected with it—and his adjudication that the petition was sufficient.

Coming down to the real question at issue it is this:

That when dry territory has been created under 98 O. L. 68, Sec. 1, by a majority of the qualified electors of the residence district who sign a petition, present it to the common pleas judge, and a residence district established, whether or not a second petition could be filed which overlaps the first district.

In the construction of statutes, where statutes are ambiguous, the rule is without question that the purpose of the court is to ascertain, if it possibly can, what the legislative intent was. If there is no ambiguity, the court can only follow the statute as it finds it. We agree also to the proposition that the policy of legislation for years past has been tending towards the stricter regulation of the liquor traffic. And the trend of judicial decisions for a number of years has been to the same effect. The power of the legislature is supreme when it comes to legislating upon the question of the sale of intoxicating liquors. It comes, as we have heretofore held in one of the counties of this circuit, within what we term the police power of the state.

We have no doubt but that the legislature, if it felt proper to do so, could have created by positive enactment a law which would provide for the overlapping of territory in a second petition. We think it could have provided, and it would probably be an answer to the argument of counsel in this case, that if it had so provided for county local option, that the county would in that case be a unit, and the vote taken later on county local option would control the smaller units, such as towns and townships. But we do think that the authorities

cited by counsel in support of that proposition depend largely upon the fact that the legislature of Texas and Kentucky, and of other states, has given by exact terms the power for the larger unit to control the smaller.

Now in construing this act, 98 O. L. 68, counsel must concede that we must construe its sections so as to make them all harmonize, if possible. The three sections of the act that are important in this case are the first, second and sixth. I will read briefly from the three sections.

Section 1 provides, in substance, that "Whenever a majority of the qualified electors of any residence district of any municipal corporation sign a petition in favor of prohibiting the sale of intoxicating liquors as a beverage in such residence district and file the petition with the * * * judge of the court of common pleas of the county, * * * the judge shall examine the petition at a public hearing * * * and cause a copy of his decision to be filed with the clerk of the municipal corporation." Then provided, that if "it shows that a majority of the voters of such residence district were in favor of prohibiting the sale of intoxicating liquors as a beverage," that it shall be prima facie evidence that the selling, etc., shall be unlawful.

Section 2 provides, in substance, that whenever a majority of the qualified electors of any residence district in which the sale has been prohibited under the provisions of Section 1 of this act, "shall sign a petition against prohibiting the sale of intoxicating liquors as a beverage in the same residence district and file the petition with the * * * judge of the court of common pleas, * * * the judge shall decide upon the sufficiency of the petition and cause a copy of his decision to be filed with the clerk of the municipal corporation." And that shall be taken as prima facie evidence that the sale of intoxicating liquors in the residence district is not then and there prohibited.

Then the section provides that the petition provided for in this section shall not be filed until after two years or more shall have elapsed after the filing of the petition provided for in Sec. 1 of the act.

Section 6 of the act provides, in substance, that "the territory enclosed by the boundary of any residence district within which the sale of intoxicating liquors has been prohibited, as provided for in Sec. 1 of this act, shall be controlled by the result of such action, and the law shall remain in full force and effect in said residence district for two years and thereafter until another petition is presented under the provisions of section two of this act in said residence district; and after a petition against prohibiting the sale of intoxicating liquors

Kilcoyne v. Hutchins.

has been presented, and held sufficient by the judge  *  *  *  , another
petition cannot be presented for two years thereafter.''

It is claimed here that under the provisions of Sec. 1 of this act,
which provides that whenever a majority of the qualified electors of.
"*any residence*" district shall file a petition in the first instance, that
they have a right under the purview and the construction of that section
to create as many districts as they may please, any one of which may.
overlap prior districts. And the force of the argument is spent upon
the words found in the first section, that electors of "*any residence*"
district may take such action. And they say the court must construe
the various sections of this act so as to give effect ʼto that language in
Sec. 1. But with due deference to the very able and certainly very
ingenious argument of counsel who represent that view of the case,
we are unable to come to that conclusion. And I will give our reason,
very briefly, for it.

As I have stated, all the sections of this act should be harmonized,
if possible, and none of them should be in effect nullified or repealed
by action of the court. The judiciary cannot legislate. Nor can it
nullify legislation. And we think that were we to give the effect to the
act that counsel claim, it would be in effect a nullification of certain
provisions found in Secs. 2 and 6.

The legislature has provided by Sec. 1 of the act that the qualified
electors of any certain district may carve out a district, present their
petition, and that district shall remain dry for the space of two years
or more. In two years thereafter, or at any time after two years, the
same electors or a majority of them may file a petition, if they see fit,
seeking to create a wet territory out of that dry territory. Now there
is no room, we think, for the construction of these various sections.
And we think that the legislature has established these districts as
units; and that when the district has been established it remains a
district; and that action on various petitions that may be filed there-
after must be taken in connection with that fact; that if one district
has been established, and a court has passed upon it, certain rights
have accrued to the electors of that district. ·

Take the case in question. Here was a residence district, created
in May, 1907, which, by the action of the judge of the court of com-
mon pleas, was made dry. Under a later petition, dated October 24,
1907, various electors of this dry district aforesaid, together with forty-
·five others, in a block of territory attached to it, have filed another
petition asking that this overlapping district be also constituted dry
territory. Can that be done? What would the effect be? Unques-

Scioto County.

tionably, under Sec. 2 of this act, when a district has been created by the finding of the court as dry territory, the qualified electors of that district in two years time have the right to change the character of that district by petition. The electors residing in the district established by the petition of May 21, 1907, on May 21, 1909, have a right to again petition that the sale of intoxicating liquors shall not be prohibited. But suppose that the judge of the court of common pleas should have found the second petition also sufficient and valid (which overlaps the territory in the first), what would be the effect?

Assume, for instance, this proposition: That the electors residing in the first territory would be perfectly satisfied to rest under the rights acquired by them under the first petition. They would not only rest satisfied for a period of two years, but for a period of three years, or indefinitely. Now with that assumption, assume now that the qualified electors of the second district in two years after October, 1907, or in October, 1909, would again petition for the purpose of establishing a wet territory; that the judge would thereupon find that petition sufficient. What would be the effect of it? That territory or part of it would necessarily be wet. What part of it would be wet? Could the first residence district be wet? Unquestionably, no. Because its electors have acquired rights under these various sections which accrue to them as residents of the first district.

The contention further, as I understand it, however, is that all the territory in the second district would not be wet after October, 1909, but the block that was attached to it only would be wet under a petition of that kind. And what would be the result? The result would be that in the residence district, created by the second petition, part of that residence district would inevitably have to be dry and part wet. And the part wet, in the case at bar, would have but forty-five qualified electors. I think counsel understand me when I take the proposition as counsel claim it. And I will state it again, although I may state it possibly more at length than I should in my judicial opinion, which is this:

If the qualified electors of the first district established by the petition of May 21, 1907, were content to rest upon their rights acquired under that section for a period of two, or three, or four years, and no petition should be again filed for that district, but if under the second petition filed on October 24, 1907, that district with an additional block attached, a majority of the electors of the second district in October, 1909, should again file their petition in the interest of wet territory, and such third petition found sufficient by the judge, the

Kilcoyne v. Hutchins.

effect would be to do either one of two things. Either to make the entire second district wet, which would be in contravention of Sec. 2 of this act, under which the electors of the first district would have a right in their own limits after two years or more to petition, or it would create in the second territory or district a state of affairs as follows: it would create part of a district wet (which would be the block in question, containing forty-five electors) and the balance of that entire district would have to be dry. The result would be, we would. have a wet district containing forty-five electors, when the statute required that every district—residence district—under the provisions of this act must have at least three hundred.

Secondly. If you can overlap territory by a second petition, you can do it by a third, you can do it by a fourth, you can do it *ad infinitum;* and if these various dry distrcts are overlapped. and remain in *statu quo* for a period of two years or more, respectively, and contests came on from the other or wet side of the issue, it would do this—we would have this condition of affairs—that there would be no finality with reference to any residence district in any municipal corporation, because after two years time if there had been various overlappings before that time, the wets could come in and file petitions time after time, or according to the number of petition that have been filed for the drys, and the result would be contests in the same residence district by one side or the other. This, of course, may be an extreme assumption, but it could be done, and when we take into consideration the motives that underlie the action of parties where this issue is in question, why it might be done frequently. When the qualified electors of the first district signed—the majority of them signed the first petition in this case—we think that they acquired a vested right which could not be interfered with except by legislative authority. Counsel upon both sides will probably agree to that proposition, but they will disagree as to the next proposition, whether or not that right has been interfered with. The right which they have acquired is that the electors of that district should have that district dry for a period of two years and more. Now, speaking for the full court, this right is interfered with should we follow the construction asked by counsel in support of the second petition. I say, it might be interfered with. For instance, if, under the second petition or under a third petition overlapping territories that were incorporated in the first petition, which are entitled to remain dry for a period respectively of two years, later petitions from the wets came in to create or establish such a wet territory, we would have additional territory overlapping the first in which electors

had rights acquired under the first petition and in its exact territorial limits. In other words, it is not impossible to assume that in this class. of cases after two years of time have passed, that the electors of such first district may sign wet petitions, thus establishing wet or dry districts as they see fit in their own residence district.

Now when we construe (and we think it really needs no construction), but were we asked to construe the words "in residence district" in Sec. 1 of this act, we think that that means a district that. has been established by petition as a unit. And that when the said district is afterwards referred to in the various parts of this act as the "same district," or as the "said district," it refers to that unit as established by such a petition. We think any other holding would, in effect, be a judicial nullification of Secs. 2 and 6 of this act. What else could Sec. 6 mean than a nullification were we to hold otherwise? That section provides that the territory enclosed by the boundary of any residence district, in which the sale of intoxicating liquors has been prohibited as provded by Sec. 1 of this act, shall be controlled by the result of such action, and the law shall remain in full force and effect. in said residence district for two years.

If a petition is filed in the second district it surely can not affect. the first district under the provisions of Sec. 6. And if it could not. affect the provisions of the first district under Sec. 6 it would mean nothing more or less than what I have said, it might have the effect of creating a block of wet territory out of the district in question, leaving only the balance of that residence district dry—leaving a residence district partly dry and partly wet.

Counsel have cited but very few authorities in this case bearing upon the question here, except those that have been cited for the second petition, to which I have alluded. They are correct in principle and were they applicable to the case here we would be inclined of course to follow them. But we think undoubtedly that the position that we have taken in this case is the only construction that can be harmoniously given to the various sections of the Jones residence local option law, and uphold the entire law. We have no doubt. The result will be, that the action of the lower court, or the judge rather, will be reversed. The petition will be dismissed.

**Cherrington** and **Walters, JJ.,** concur.